UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JAMES FLOYD,

            Petitioner,

    v.

ROBERT W. FOX, Warden,

            Respondent.

No.  2:16-cv-1778 KJN (HC)

ORDER

I.  Introduction

      Petitioner is a state prisoner, proceeding with counsel, with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2014 conviction for first degree burglary and violating a restraining order.  Petitioner was sentenced to a total of thirteen years in state prison.  Petitioner claims that the alleged prior conviction was not established by sufficient evidence in violation of his constitutional rights, and that trial counsel provided ineffective assistance by failing to call certain defense witnesses at trial.  After careful review of the record, this court concludes that the petition should be denied.

II.  Procedural History

      On March 7, 2014, a jury found petitioner guilty of first degree burglary (Cal. Pen. Code, § 459 [count 1]) and violation of a protective order (Cal. Pen. Code, § 166(c)(1)) [count 4]); petitioner was acquitted of an additional burglary count and one count of stalking (counts 2 & 3).

1

1    (LD 1 at 190-93; LD 5 at 179-81.)[1]  On April 11, 2014, petitioner was sentenced to a total of

2    thirteen years in state prison.  (LD 1 at 234; LD 5 at 209.)  Petitioner filed a notice of appeal on

3    April 14, 2014.  (LD 1 at 235.)

4           On October 2, 2014, petitioner filed a petition for writ of habeas corpus with the

5    Sacramento County Superior Court (case number 14HC00561).  (LDP 7.)  The petition was

6    denied November 20, 2014.  (LDP 8.)

7           Petitioner filed his opening brief in the California Court of Appeal, Third Appellate

8    District, on January 23, 2015; respondent's brief and petitioner's reply brief followed.  (LDP 1-3.)

9           At about the same time petitioner's opening brief was filed in the direct appeal, on

10   January 26, 2015, petitioner filed another petition for writ of habeas corpus in the Sacramento

11   County Superior Court (case number 15HC00049).  (LDP 9.)  The petition was denied March 19,

12   2015.  (LDP 10.)

13          On March 12, 2015, petitioner filed a third petition for writ of habeas corpus in the

14   Sacramento County Superior Court (case number 15HC00161).  (LDP 11.)  The petition was

15   denied May 6, 2015.  (LDP 12.)

16          On March 27, 2015, petitioner filed a habeas petition with the Third District Court of

17   Appeal.  (LDP 13.)  That court denied the petition April 9, 2015.  (LDP 14.)

18          On April 2, 2015, petitioner filed a fourth petition for writ of habeas corpus with the

19   Sacramento County Superior Court (case number 15HC00203).  (LDP 15.)  The petition was

20   denied May 6, 2015.  (LDP 16.)

21          On or about April 22, 2015, petitioner filed a petition for review in the California Supreme

22   Court (case number S225938); the court denied review on June 10, 2015.  (LDP 17-18.)

23          On July 27, 2015, in an unpublished opinion, the Third District Court of Appeal affirmed

24   petitioner's conviction.  (LDP 4.)

25   _____

26   [1] "LD," followed by a volume number, refers to the documents lodged electronically with this
     court on March 26, 2019; the page number references are to those automatically assigned by the
27   court's CM/ECF system.  "LDP" refers to the documents lodged with this court in paper format
     on December 30, 2016.

28

1    Thereafter, on or about August 24, 2015, petitioner filed a petition for review in the

2    California Supreme Court (case number S22875).  (LDP 5.)  The state's highest court denied

3    review on September 30, 2015.  (LDP 6.)

4    On July 28, 2016, petitioner filed a petition for writ of habeas corpus with this court.

5    (ECF No. 1.)  On November 14, 2016, petitioner filed a motion to appoint counsel.  (ECF No. 8.)

6    The motion was denied December 7, 2016.  (ECF No. 9.)

7    A motion to dismiss was filed by respondent on December 30, 2016.  (ECF No. 14.)

8    On March 7, 2017, petitioner moved for the appointment of counsel.  (ECF No. 18.)  On

9    March 24, 2017, the undersigned granted the motion for appointment of counsel to represent

10   petitioner.  (ECF No. 19.)

11   On April 11, 2017, attorney Charles M. Bonneau, Jr. was substituted in as appointed

12   counsel for petitioner.  (ECF No. 21.)

13   On June 2, 2017, petitioner filed his opposition to respondent's motion to dismiss.  (ECF

14   No. 25.)  Respondent replied thereto on June 15, 2017.  (ECF No. 26.)

15   On July 7, 2017, the undersigned partially granted respondent's motion to dismiss, finding

16   grounds three and four of the originally filed petition to be unexhausted; further, the matter was

17   stayed pending exhaustion of ground two.  (ECF No. 27.)

18   Petitioner moved to lift the previously imposed stay on January 3, 2018, and appended a

19   December 18, 2017 denial order from the California Supreme Court, in case number S244441,

20   with a citation to People v. Duvall.  (ECF No. 28.)   Accordingly, the stay was lifted March 5,

21   2018.  (ECF No. 29.)

22   Thereafter, on April 23, 2018, petitioner moved for a second stay of the proceedings,

23   indicating a second exhaustion petition should be filed in the California Supreme Court with

24   appropriate documentation to support the claim.  (ECF No. 32.)  A supplement to the motion was

25   then filed May 1, 2018, and included a copy of the habeas petition filed that same date in the

26   California Supreme Court, in case number S248527.  (ECF No. 33.)  Respondent opposed the

27   motion for a second stay (ECF No. 34) and petitioner replied to the opposition (ECF No. 35).

28   //

3

Before the undersigned issued any ruling on petitioner's second motion to stay, on January 4, 2019, petitioner filed a "Second Motion to Lift Stay," indicating the California Supreme Court had denied the habeas corpus petition filed in case number S248527, on the merits and without citation to any procedural rule. (ECF No. 36.)

On January 23, 2019, the undersigned denied petitioner's second motion to lift the stay as moot and ordered an amended petition for writ of habeas corpus be filed within thirty days, to be followed by respondent's answer thereto.  (ECF No. 37.)

The first amended, and currently operative, petition for writ of habeas corpus was filed February 20, 2019.  (ECF No. 38.)  Respondent filed its answer on March 25, 2019.  (ECF No. 39.)  Thereafter, on April 4, 2019, petitioner filed his traverse.  (ECF No. 41.)

On December 12, 2019, petitioner filed a supplement to his traverse.  (ECF No. 42.) Respondent filed a sur-reply on December 30, 2019.  (ECF No. 44.)

The parties consented to the jurisdiction of the magistrate judge pursuant to 28 U.S.C. §636(c)(1).  (ECF No. 45.)

III.  Facts[2]

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

> The present burglary conviction arose out of an incident on October 20, 2013, at the apartment of Nabresha Gethers, defendant's onetime girlfriend and mother of his child. They had known each other since 2009, and during their time together Gethers worked as a prostitute, giving all of her earnings to defendant.
>
> Around August 2011, when they were living in Los Angeles, defendant and Gethers had an argument and hit each other. The police were called, defendant was arrested, and the court issued a restraining order against him.
>
> Their son was born in 2012. Gethers's relationship with defendant was on-and-off during that time. After the baby was born, Gethers did not want to be with defendant, and stopped working as a

---

[2]  The facts are taken from the July 27, 2015, unpublished opinion of the California Court of Appeal for the Third Appellate District in People v. Floyd, No. C076236, a copy of which was lodged by respondent as LDP 4 on December 30, 2016.

prostitute because she wanted a better life for her son. However, defendant kept calling Gethers because he wanted to be with her and with his son. He would go to Gethers's parents' house and honk his horn in the middle of the night, or break Gethers's windshield out if she did not let him see his son.

Gethers did not call the authorities every time defendant showed up at her apartment because she was afraid of being evicted. But she called the sheriff on October 18, 2013. She complained that defendant was knocking on her door and peeking in her windows. She told the officers that she had a restraining order against defendant. Defendant was not at the apartment when sheriff's deputies arrived; however, they returned about 1:00 a.m., saw defendant standing in front of the apartment, and arrested him.

The next day, October 19, 2013, defendant sent a series of text messages around 4:00 p.m. In order, they said: "Somebody left a bike in your house. You might get evicted today. All over. Told them to come down here. Let's see who's ready to die for you. Why are you crying? What's wrong?" At some point, defendant also texted Gethers pictures of her personal property, including her watch, jeans, purse, Social Security card, and her son's Social Security card.

When Gethers went to her apartment on October 20, 2013, she found the apartment had been flooded. The front windows were all open and the screens were off. Everything that had been in her closet was strewn around her living room. Her papers and mail were in her bathtub. Defendant's prints were found on the exterior master bedroom window, the exterior kitchen window, and the exterior living room window.[Fn. omitted.]

(People v. Floyd, slip op. at *1-2.)

IV.  Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

5

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 132 S. Ct. 38, 44-45 (2011)); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)).  Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)).  However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 569 U.S. 58, 64 (2013) (citing Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012) (per curiam)).  Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. Id.  Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. Carey v. Musladin, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003).  Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. [3] Lockyer v.

---

[3]  Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence

Andrade, 538 U.S. 63, 75 (2003); Williams v. Taylor, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004).  In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Williams v. Taylor, 529 U.S. at 411.  See also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its 'independent review of the legal question,' is left with a '"firm conviction"' that the state court was '"erroneous"'").  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement."  Richter, 562 U.S. at 103.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims.  Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised").

The court looks to the last reasoned state court decision as the basis for the state court judgment.  Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision.  Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  "When a

_____

presented in the state court proceeding."  Stanley, 633 F.3d at 859 (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

1   federal claim has been presented to a state court and the state court has denied relief, it may be

2   presumed that the state court adjudicated the claim on the merits in the absence of any indication

3   or state-law procedural principles to the contrary." Richter, 562 U.S. at 99.  This presumption

4   may be overcome by a showing "there is reason to think some other explanation for the state

5   court's decision is more likely." Id. at 99-100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803

6   (1991)).  Similarly, when a state court decision on petitioner's claims rejects some claims but

7   does not expressly address a federal claim, a federal habeas court must presume, subject to

8   rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, 568 U.S. 289,

9   (2013) (citing Richter, 562 U.S. at 98).  If a state court fails to adjudicate a component of the

10  petitioner's federal claim, the component is reviewed de novo in federal court. Wiggins v. Smith,

11  539 U.S. 510, 534 (2003).

12         Where the state court reaches a decision on the merits but provides no reasoning to

13  support its conclusion, a federal habeas court independently reviews the record to determine

14  whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v.

15  Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  "Independent review of the record is not de novo

16  review of the constitutional issue, but rather, the only method by which we can determine whether

17  a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853.  Where no

18  reasoned decision is available, the habeas petitioner still has the burden of "showing there was no

19  reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98.

20         A summary denial is presumed to be a denial on the merits of the petitioner's claims.

21  Stancle v. Clay, 692 F.3d 948, 957 & n.3 (9th Cir. 2012).  While the federal court cannot analyze

22  just what the state court did when it issued a summary denial, the federal court must review the

23  state court record to determine whether there was any "reasonable basis for the state court to deny

24  relief." Richter, 562 U.S. at 98.  This court "must determine what arguments or theories . . . could

25  have supported the state court's decision; and then it must ask whether it is possible fairminded

26  jurists could disagree that those arguments or theories are inconsistent with the holding in a prior

27  decision of [the Supreme] Court." Id. at 101.  The petitioner bears "the burden to demonstrate

28  that 'there was no reasonable basis for the state court to deny relief.'" Walker v. Martel, 709 F.3d

925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo.  Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006).

V.  Petitioner's Claims

**A. *Sufficiency of the Evidence: Prior First Degree Burglary Enhancement***

Petitioner claims that there was insufficient evidence to support the enhancement of his sentence pursuant to a prior conviction for first degree burglary.  (ECF No. 1; ECF No. 38-1 at 11-19; ECF No. 41 at 2-5.)  Respondent maintains that, to the degree petitioner's claim is cognizable in these proceedings, the state court's denial of the claim was not unreasonable.  (ECF No. 39 at 15-21; ECF No. 42.)

This claim was presented to the California Supreme Court on May 1, 2018, in a state habeas petition.  (See ECF No. 33-1.)  It was summarily denied on January 2, 2019.  (See ECF No. 36-1.)  "Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court."  Richter, 562 U.S. at 102.

Applicable Legal Standards

The Due Process Clause of the Fourteenth Amendment protects a criminal defendant from conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  In re Winship, 397 U.S. 358, 364 (1970).  Thus, one who alleges that the evidence introduced at trial was insufficient to support the jury's findings states a cognizable federal habeas claim.  Herrera v. Collins, 506 U.S. 390, 401−02 (1993).  Nevertheless, the petitioner "faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds."  Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005).  On direct review, a state court must determine whether "any rational trier of fact

9

could have found the essential elements of the crime beyond a reasonable doubt." Jackson v.

Virginia, 443 U.S. 307, 319 (1979). Federal habeas relief is available only if the state court

determination that the evidence was sufficient to support a conviction was an "objectively

unreasonable" application of Jackson.  Juan H., 408 F.3d at 1275 n.13.

Habeas claims based upon alleged insufficient evidence therefore "face a high bar in

federal habeas proceedings because they are subject to two layers of judicial deference."

Coleman v. Johnson, 566 U.S. 650, 651 (2012) (per curiam).  As noted by the Supreme Court:

> First, on direct appeal, "it is the responsibility of the jury−not the
> court−to decide what conclusions should be drawn from evidence
> admitted at trial. A reviewing court may set aside the jury's verdict
> on the ground of insufficient evidence only if no rational trier of fact
> could have agreed with the jury." And second, on habeas review, "a
> federal court may not overturn a state court decision rejecting a
> sufficiency of the evidence challenge simply because the federal
> court disagrees with the state court. The federal court instead may do
> so only if the state court decision was 'objectively unreasonable.'"

Id. (citations omitted).

The Jackson standard "must be applied with explicit reference to the substantive elements

of the criminal offense as defined by state law." Jackson, 443 U.S. at 324 n.16.  In performing a

Jackson analysis, a jury's credibility determinations are "entitled to near-total deference." Bruce

v. Terhune, 376 F.3d 950, 957 (9th Cir. 2004).  When the factual record supports conflicting

inferences, the federal court must presume that the trier of fact resolved the conflicts in favor of

the prosecution, and must defer to that resolution.  Jackson, 443 U.S. at 326.  A reviewing court

will consider all of the evidence admitted by the trial court when considering a sufficiency of the

evidence or Jackson claim.  McDaniel v. Brown, 558 U.S. 120, 131 (2010).

Concerning claims that involve prior convictions used to support recidivist statutes

specifically, the United States Supreme Court held in Dretke v. Haley the following: "citing

Jackson v. Virginia, respondent here [prisoner Haley] seeks to bring through the actual innocence

gateway his constitutional claim that the State's penalty-phase evidence was insufficient to

support the recidivist enhancement. But the constitutional hook in Jackson was In re Winship, in

which we held that due process requires proof of each element of a criminal offense beyond a

reasonable doubt. We have not extended Winship's protections to proof of prior convictions used

1    to support recidivist enhancements."  Dretke v. Haley, 541 U.S. 386, 395 (2004) (internal

2    citations omitted).

3                              Analysis

4                         *Relevant Background*

5           The amended information alleged that petitioner had suffered a prior conviction for first

6    degree residential burglary in San Francisco County Superior Court in 2005.  (LD 2 at 4-7.)

7           After the jury's verdicts, petitioner waived his right to a jury trial on the prior conviction

8    allegations.  (LD 5 at 181-83.)  The parties originally appeared on April 4, 2014, for sentencing

9    proceedings.  On that occasion, trial counsel objected to the documentation offered by the People

10   concerning petitioner's prior conviction, identified as People's Exhibits 3 and 46.[4]  (LD 5 at 188-

11   90.)  The trial court asked the parties to continue the matter to allow for briefing on the issue; the

12   matter was rescheduled for April 11, 2014.  (LD 5 at 190-91; see also LD 1 at 206-10 [briefing].)

13          On April 11, 2014, the following proceedings occurred:

14                  THE COURT:  There was a question raised with regard to the
             documentation submitted by way of exhibit by the People in support
15           of the Court trial on the strike prior, the defendant previously having
             waived the jury trial.  And there was offered into evidence by the
16           People Exhibit 3, which comes from the Superior Court of
             California, County of San Francisco, and which on the cover page
17           under the heading of Michal Yu en, the court executive officer, Y-U-
             E-N, in response to the district attorney's request for records
18           concerning Mr. Floyd, the Superior Court indicated by checking a
             box on a form that this order for this docket was placed by us on
19           February 7th, the warehouse could not locate the original docket, nor
             could it be found here on location.  It appears to be lost at this point
20           in time. We apologize for the inconvenience.

21                  And then at the next page stapled to the page just referenced is a
             record by the Superior Court of California, County of San Francisco,
22           which shows reference to this matter and indicates that the Court has
             appointed G. Borge's, G, letter G, B-O-R-G-E-S, as conflict counsel
23           to represent Mr. Floyd on a first-degree burglary charge.

24                  And then it goes on to indicate the disposition in this matter which
             was that the defendant was placed on felony probation, served a term
25           in the county jail of 42 days and received credit for time served of 42
             days and so forth.  And that is detailed more completely.

26

27                  It is not exactly the kind of record that we always see on these - - or

28   [4] The exhibits themselves have been electronically lodged with this court.  See LD 3 at 4-33.

                                        11

1        that we frequently see on these matters.

2        And then the People also asked to be moved into evidence People's
     Exhibit 46, which is the certified rap sheet, the CLETS printout. And
3    an issue was raised and pleas were filed by both the defense and the
     prosecution in respect to this primarily with focus on the CLETS
4    exhibit, the People's Exhibit 46.

5        Let me indicate that I have read <u>People versus Martinez</u>, which I
     think is the best case in this general area, and that is at 22 Cal 4th
6    106. And the cases that I specifically focused on started on 117 and
     continued through 121, 122, et cetera.
7

8        Let me indicate, also, that the People filed - - or noticed the counsel
     and Court by way of an e-mail transmittal that one of the exhibits
9    which was played at trial was a redaction of a longer - - it was not an
     exhibit, it was a redaction of a longer audio exhibit which represented
     a phone call between the defendant in the jail and the
10   complainant/victim in this case. And that exhibit, according to the
     district attorney in the e-mail, had the defendant himself referencing
11   the strike prior.

12       I pulled the People's 32[5], which is not in evidence, but which was
     part of the body of evidence brought in, but was not admitted. And
13   that is the larger conversation, not the redacted iteration which the
     jury heard. And I played that. And on the motion of the People to
14   admit that into evidence, I am going to admit that. And I will let you
     be heard if you wish to oppose that, Ms. O'Connor, but I'm just
15   summarizing so you know where I'm going.

16       And there is a portion on there where the defendant says, I have a
     strike for burglary, a home invasion.  I told you that. And he is
17   speaking to the victim on that.  So now I want to go to you, Ms.
     O'Connor.
18

19   (LD 5 at 193-95.)  Defense counsel argued the exhibits lacked authentication as to all three, and

20   also on the basis of multiple hearsay as to the jail call.  (LD 5 at 195.)  The trial court also heard

21   from the People (LD 5 at 195-96) before ruling:

22       THE COURT:  I am going to admit People's 46 and People's 3 and
     People's 32. …
23

24       46, I am admitting based upon my reading of <u>Martinez</u>. Standing
     alone, I - - if there were no other evidence in support of the
     proposition that Mr. Floyd was convicted of first-degree burglary, I
25   would be more persuaded by Ms. O'Connor's position in this matter.
     But I do find that it is probative evidence and it should be admitted
26   as a part of the body of evidence that the Court can legitimately

27

     ---
     [5] The transcript for the redacted version of this conversation between petitioner and Gethers
28   appears in the record.  (LD 1 at 111-16.)

1    consider in connection with the trial on the issue of the priors.

2    I note also, as referenced in <u>Martinez</u>, the Penal Code Sections 11101
     and 11104 and 11105 having to do with the responsibility of the
3    attorney general to accurately and contemporaneously report
     convictions into what becomes CLETS, and also 11107 and 11115
4    and so forth.

5    I think that the recognition of the statutory responsibility of the
     attorney general in this regard supports the reasonable inference that
6    this is an accurate recitation of information in an authentic certified
     record document that at least warrants admission into evidence. The
7    issue that could be argued, obviously, goes to the weight of it,
     whether it's sufficient in and of itself to conclude beyond a
8    reasonable doubt that the defendant was convicted of a first-degree
     burglary, as referenced in the CLETS report.
9
     But those two in conjunction with number 32, the call in which he
10   specifically says, *I have a strike for burglary, a home invasion and I
     told you that*, caused the Court to conclude that there is a lot of
11   probative and relevant evidence that ought to be considered in
     connection with deciding whether the People have proved their case
12   beyond a reasonable doubt.

13   The objection about hearsay is, I think, not well taken because you -
     - and I know - - I assume you're talking about hearsay beyond the
14   level of Mr. Floyd. You're talking about when he heard of this. Of
     course his own statement is hearsay, but it comes in under exception
15   under an admission of a party opponent.   The audio was
     authenticated during the trial so I don't have any issue or concern
16   about that. And the fact that somebody personally is informed of,
     knows of the fact that he was convicted of a felony is not something
17   that I think is legitimately subject to a hearsay objection because it's
     - - you know, a Court, counsel, probation officer, because different
18   people were in the mix on informing the defendant of this.  The
     reason that it's in there, the reason that it doesn't present a hearsay
19   issue is because the defendant himself entered a plea on it or was
     convicted by a jury on it and was present, in either case, for the
20   immediate experiencing of the fact that he has been convicted of
     first-degree burglary.
21

22   (LD 5 at 196-98, italics in original.)  The defense did not submit any evidence in dispute and both

23   parties submitted without further argument.  (LD 5 at 198-99.)  Thereafter, the trial court

24   concluded:

25   THE COURT:  Based upon the evidence referenced in the previous
     ruling, the Court does find that the People have proved beyond a
26   reasonable doubt that the defendant did indeed suffer the strike
     conviction of first-degree burglary that is alleged in the Information
27   and that he violated Section 459 of the Penal Code, the crime of first-
     degree residential burglary, on September 7, 2005, in the Superior
28   Court of the State of California for the County of San Francisco.  He

13

suffered that conviction so I find that conviction to be true.

(LD 5 at 199.)

*Determination*

Under California law, a trial court may enhance a defendant's sentence if the defendant has a prior "serious" or "violent" felony conviction, commonly referred to as a "strike." Whether a prior conviction is "serious" or "violent" is statutory prescribed in the state's Penal Code. See Cal. Pen. §§ 667, 1170.12. Relevant here, first degree burglary is a serious felony. Cal. Pen. Code, § 1192.7(c)(18).

To the degree petitioner's claim, as presented in this court, can be interpreted to challenge the state court's interpretation or application of state sentencing law, it is not cognizable. Wilson v. Corcoran, 562 U.S. at 5; Estelle v. McGuire, 502 U.S. at 67-68; Miller v. Vasquez, 868 F.2d 1116, 1118-19 (9th Cir. 1989) (noting that whether a prior conviction qualifies for a sentence enhancement under California law is not a cognizable federal habeas claim).

Alleging a violation of his federal due process rights, petitioner asserts the evidence was insufficient concerning the prior burglary conviction because (1) there is no "record of the prior conviction," "no transcript of a plea colloquy and no evidence of written rights waivers;" (2) a rap sheet is not sufficient evidence of a prior serious felony; and (3) "uncounseled and unsworn" recorded jail conversations do not amount to substantial evidence because petitioner is "not a qualified witness on the validity of a prior conviction," and "[a]t best he was repeating hearsay."

Under California law, "[t]he People must prove each element of an alleged sentence enhancement beyond reasonable doubt." People v. Delgado, 43 Cal.4th 1059, 1065 (2008); People v. Miles, 43 Cal.4th 1074, 1082 (2008); see also People v. Haney, 26 Cal.App.4th 472, 475 (1994) ("To establish a prior conviction enhancement allegation, the prosecutor must prove beyond a reasonable doubt all elements of the enhancement, i.e., the defendant was convicted, the conviction was of an offense within the definition of the particular statute invoked, and any other element required by the statute alleged (e.g., proof defendant served a term in state prison if that is an element of the enhancement)"). "A common means of proving the fact and nature of a prior conviction is to introduce certified documents from the record of the prior court proceeding and

14

1    commitment to prison, including the abstract of judgment describing the prior offense." <u>Delgado</u>,

2    43 Cal.4th at 1066; <u>Miles</u>, 43 Cal.4th at 1082; Cal. Pen. Code § 969b; <u>see also</u> <u>People v. Prieto</u>,

3    30 Cal.4th 226, 258 (2003) ("'As a practical matter, ... prior convictions are normally proven by

4    the use of documentary evidence alone'" [citation omitted], cert. denied, 540 U.S. 1008 (2003)).

5        "[O]fficial government records clearly describing a prior conviction presumptively

6    establish that the conviction in fact occurred, assuming those records meet the threshold standards

7    of admissibility." <u>People v. Delgado</u>, 43 Cal.4th at 1066 (citing Cal. Evid. Code § 664).

8        In <u>People v. Martinez</u>, 22 Cal.4th 106 (2000), the California Supreme Court held that

9    evidence other than the record of conviction and certified prison records (Cal. Pen. Code, § 969b)

10   is admissible to show that a defendant served prison terms for prior felony convictions.  Provided

11   that the evidence satisfies applicable rules of admissibility, such evidence is admissible to

12   establish matters other than the nature and circumstances of the conduct underlying a prior

13   conviction.  California Penal Code section 969b is essentially a hearsay exception that allows

14   certified copies of the specified records to be used for the truth of the matter asserted in those

15   records, i.e., that a person served a prison term for a prior conviction.  However, that section is

16   permissive and not mandatory.  It does not restrict the People from using other forms of proof to

17   establish the fact of previous imprisonment.  Further, the trier of fact may look to the entire record

18   of conviction to determine the substance of the prior conviction, including rap sheets.  <u>Martinez</u>,

19   at 116-19.

20        Here, the trial judge ruled that the evidence in question was admissible in accordance with

21   the applicable state law.  That question is not before this court.  The undersigned must consider

22   whether any rational factfinder could have found the evidence relied upon by the trial court in

23   making its determination as to whether petitioner suffered a prior serious felony conviction was

24   sufficient.  Following a careful, independent review of the record, the undersigned concludes that

25   the California Supreme Court could have reasonably concluded that the evidence admitted was

26   sufficient to support the trial court's finding that petitioner suffered a prior serious felony

27   conviction for first degree burglary in San Francisco County Superior Court.

28   //

1    More particularly, on this record, a rational trier of fact could have concluded that (1) the

2    official correspondence of the San Francisco County Superior Court Clerk, noting the loss of the

3    record pertaining to "FLOYD/JAMES" with a date of birth of "09-29-80," in "Court Number:

4    2222562," an arrest date of "06-16-2005," and a notation to a violation of "459PC/F" (LD 3 at 4),

5    (2) a certified copy of a minute order dated September 7, 2005, in the case entitled People of the

6    State of California vs. James Floyd, with a notation of "MC # 02222562," wherein a guilty plea to

7    a violation of "PC 459/F 1st" was entered while defendant was represented by appointed counsel

8    "G. BORGES" (LD 3 at 5-6), (3) a certified California Law Enforcement Telecommunications

9    System (CLETS) printout concerning petitioner's criminal history totaling 27 pages (LD 3 at 7-

10   33), including the specific notation that he was convicted of "459 PC-BURGLARY:FIRST

11   DEGREE …FELONY" in "#02222562" in San Francisco County Superior Court on September

12   7, 2005 (LD 3 at 15-16), coupled with evidence in the form of defendant's admission during a

13   recorded jail conversation, amounted to sufficient evidence that petitioner had suffered a prior

14   conviction for first degree burglary, a serious felony, in violation of California Penal Code section

15   459.[6] [7]  Cf. United States v. Yepiz, 718 F. Appx. 456, 475 (9th Cir. 2017) (a certified California

16   felony complaint, the state court's minute order showing defendant had pled nolo contendere to

17   the charged offense, and a "certified Disposition of Arrest and Court action form" provided

18   sufficient evidence of the defendant's prior California conviction), cert. denied, 138 S. Ct. 1340

19

---

20   [6] The probation officer's report, a part of the record lodged in this court, states: "The facts
     regarding this offense are unknown.  The connecting police report to this offense, S.F.P.D.

21   #0506725574, and S.F. Adult Probation report #543696 have both been obtained and both
     indicate the defendant was arrested for a warrant for 212.5 P.C. on 6/16/05.  The specific facts of

22   the crime are unknown."  (LD 1 at 221.)

23       California Penal Code section 212.5 pertains to the crime of robbery and provides, in
     relevant part, "[e]very robbery of any person who is performing his or her duties as an operator of

24   any bus, taxicab, [et cetera] …, and every robbery which is perpetrated in an inhabited dwelling
     house, a vessel … which is inhabited and designed for habitation, an inhabited floating home …,

25   a trailer coach … which is inhabited, or the inhabited portion of any other building is robbery in
     the first degree."

26

27   [7] Defendant's motions in limine, filed February 18, 2014, note petitioner's "record of prior
     convictions," including "9-7-05 459PC 1st degree" and sought bifurcation of that conviction as an

28   alleged strike prior.  (LD 1 at 94-95.)

1   (2018); Diaz v. Walker, 2014 WL 7338872, *36 (C.D. Cal. 2014) ("[T]here was more than

2   enough evidence introduced during the bench trial to satisfy the Jackson sufficiency-of-the-

3   evidence standard with respect to the prior conviction" when "[t]he prosecution introduced a

4   series of judicial and law enforcement documents relating to Petitioner's arrest and conviction"

5   including "Petitioner's booking photograph and the disposition of the court action, which showed

6   that Petitioner pled guilty to [the crime in question.")]; People v. Moenius, 60 Cal.App.4th 820,

7   825 (1998) (information and minute order indicating that defendant pled guilty to crime charged

8   in the information provided sufficient evidence to establish defendant's prior conviction

9   constituted a serious felony within the meaning of California's Three Strikes law).

10      Petitioner submitted a supplemental reply to respondent's answer, providing citations to

11   two recent appellate court decisions in support of this claim.  (ECF No. 42.)  Respondent then

12   filed a sur-reply addressing petitioner's supplemental filing.  (ECF No. 43.)  Following review of

13   the parties' briefs, and the cases cited therein, the undersigned agrees with respondent.

14      More specifically, as to People v. Morales, 33 Cal.App.5th 800 (2019), the question

15   before this court, as accurately noted by respondent, is whether the California Supreme Court's

16   denial of the claim was reasonable, and not whether the trial court relied upon an ambiguous

17   record concerning a prior conviction.  As to People v. Gonzalez, 42 Cal.App.5th 1144 (2019), the

18   issue before the state court was one of admissibility – a state law question that is not cognizable

19   in federal habeas.  Miller v. Vasquez, 868 F.2d at 1118-19 (citing Middleton v. Cupp, 768 F.2d

20   1083, 1085 (9th Cir. 1985), cert. denied, 478 U.S. 1021 (1986)).  Additionally, as respondent

21   notes, the CLETS printout and the minute order relied upon in this case were indeed certified (see

22   LD 3 at 5 & 7), unlike the situation in Gonzalez.  Further, the court finds neither People v.

23   Gallardo, 4 Cal.5th 120 (2017), nor Descamps v. United States, 570 U.S. 254 (2013), apply here.

24   The question presented here does not involve the same determinations at issue in Gallardo or

25   Descamps.

26      The undersigned considered all of the evidence admitted by the trial court.  McDaniel v.

27   Brown, 558 U.S. at 131.  The trial court's ruling is unambiguous in that it considered all three

28   forms of evidence offered by the People to be sufficient, when taken together as a whole, to prove

17

1   petitioner had suffered a prior conviction for first degree burglary.  The California Supreme Court

2   could have reasonably concluded there was sufficient evidence of a prior conviction where the

3   trial court here considered not one but three different items of evidence because the otherwise-

4   typical evidence introduced for this purpose was not available to the parties, having been lost as

5   attested to by the clerk of the San Francisco County Superior Court.  At a minimum, it is

6   "possible fairminded jurists could disagree that those arguments or theories are inconsistent with"

7   the Supreme Court's decision in <u>Jackson</u>.  <u>Richter</u>, 562 U.S. at 101.  In any event, petitioner has

8   not overcome his "burden to demonstrate that 'there was no reasonable basis for the state court to

9   deny relief.'"  <u>Walker</u>, 709 F.3d at 939 (quoting <u>Richter</u>, 562 U.S. at 98).

10         In sum, the state court's decision was not contrary to, or an unreasonable application of,

11   clearly established Supreme Court authority.  28 U.S.C. § 2254(d).  Therefore, petitioner's claim

12   will be denied.

13         **B.  *Ineffective Assistance of Trial Counsel***

14         Petitioner claims that trial counsel provided ineffective assistance of counsel for failing to

15   call defense witnesses.  (ECF No. 38-1 at 28-29 [citing ECF No. 1]; ECF No. 41 at 6.)

16   Respondent maintains the state court's denial was reasonable, thus precluding relief.  (ECF No.

17   39 at 21-28.)

18         The last reasoned rejection of petitioner's claim is the decision of the Sacramento County

19   Superior Court in petitioner's second state habeas petition filed with that court:

20         The Court has received and considered the above-entitled petitioner
21         for writ of habeas corpus.  The petition is DENIED.

22         Petitioner James Floyd filed this petition claiming that he received
      ineffective assistance of counsel because his attorney failed to call
23         witnesses who would have provided a defense to the burglary charge
      for which he was convicted.

24         A petitioner seeking relief by way of habeas corpus has the burden
      of stating a prima facie case entitling him to relief.  (In re Bower
25         (1985) 38 Cal.3d 865, 872.)  A petition for writ of habeas corpus
      should attach as exhibits all reasonably available documentary
26         evidence or affidavits supporting the claim.  (People v. Duvall (1995)
      9 Cal.4th 464, 474.)  To show constitutionally inadequate assistance
27         of counsel, a defendant must show that counsel's representation fell
      below an objective standard and that counsel's failure was prejudicial
28

1    to the defendant.  (In re Alvernaz (1992) 2 Cal.4th 924, 937.)  It is
     not a court's duty to second-guess trial counsel and great deference
2    is given to trial counsel's tactical decisions.  (In re Avena (1996) 12
     Cal.4th 694, 722.)  Actual prejudice must be shown, meaning that
3    there is a reasonable probability that, but for the attorney's error(s),
     the result would have been different.  (Strickland v. Washington
4    (1984) 466 U.S. 668, 694.)

5    Here, Petitioner has failed to show that his attorney's decision to
     exclude certain witnesses resulted in prejudice.  Petitioner was
6    accused of entering the victim's apartment without her permission
     for the purpose of stealing her purse and other personal items.
7    Petitioner alleges that an investigator from the Office of the Public
     Defender interviewed witnesses whose testimony would have
8    provided a defense to this burglary charge, but that at trial his
     attorney failed to call any of these witnesses.  Specifically, he
9    contends that the testimony of Evelyn Rose, Evonne Harden, Jamin
     Thompson, and Harold Byrd would have shown that he could not
10   have committed burglary since he lived at the apartment with the
     victim and they were in a relationship.

11
     While a person cannot burglarize his or her own home, this is only
12   true if he or she has an unconditional possessory right of entry at the
     time of the alleged crime – meaning he or she could not be refused
13   admission at the threshold or be ejected from the premises after the
     entry was accomplished.  (People v. Gauze (1975) 15 Cal.3d 709,
14   714; see also People v. Ulloa (2009) 180 Cal.App.4th 601 [although
     the defendant's name was on the lease with his wife, this was not a
15   complete defense to burglary because there was evidence that he had
     moved out of the home prior to the crime].)  In addition, one who
16   enters a room or building with the intent to commit a felony is guilty
     of burglary even though permission to enter has been extended to
17   him personally or as a member of the public.  (People v. Horning
     (2004) 34 Cal.4th 871, 903, citing People v. Sears (1965) 62 Cal.2d
18   737, 746, overruled on other grounds.)  The entry need not constitute
     a trespass.  (Ibid.)

19
     The testimony in the attached interview transcripts does not show
20   that he had an unconditional possessory right of entry to the
     apartment, which is necessary for a complete defense to the burglary
21   charge.  The attached transcripts show that Petitioner's friends told
     the interviewer that he stayed at the apartment with the victim, but
22   none of them explicitly said nor is there proof, such as a lease
     agreement, that he was officially residing there.  At best, what is
23   described in the interviews is that of a guest, albeit a regular one,
     whose presence at the apartment was in the [discretion] of the victim.
24   For example, Harold Byrd, told the investigator that the victim was
     the only person with a key to the unit and that he was not sure if
25   Petitioner's name was on the lease.  Another person interviewed,
     Jamin Thompson, stated that "[victim] has a history of kicking him
26   out and then letting him move back in with her and their baby."  As
     the testimony does not provide a complete defense to the burglary
27   charge, Petitioner has failed to show that he was prejudiced by the
     exclusion of these potential witnesses.

28

1    Accordingly, the petition is denied.

2  (LDP 10.)  The California Court of Appeal, Third Appellate District, denied petitioner's claim

3  with citations to In re Steele, In re Hillery, and In re Carpenter.[8]  (LDP at 14.)  Thereafter, the

4  California Supreme Court denied review of the claim.  (LDP at 18.)

5    Applicable Legal Standards

6    To prevail on a claim of ineffective assistance of counsel, a petitioner must show that his

7  trial counsel's performance "fell below an objective standard of reasonableness" and that "there is

8  a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

9  would have been different."  Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984).

10    Under the first prong of the Strickland test, a petitioner must show that counsel's conduct

11  failed to meet an objective standard of reasonableness.  Strickland, 466 U.S. at 687.  There is "a

12  'strong presumption' that counsel's representation was within the 'wide range' of reasonable

13  professional assistance."  Richter, 562 U.S. at 104 (quoting Strickland, 466 U.S. at 689).

14  Petitioner must rebut this presumption by demonstrating that his counsel's performance was

15  unreasonable under prevailing professional norms and was not the product of "sound trial

16  strategy."  Strickland, 466 U.S. at 688-89.  Judicial scrutiny of defense counsel's performance is

17  "highly deferential," and thus the court must evaluate counsel's conduct from her perspective at

18  the time it occurred, without the benefit of hindsight.  Id. at 689.  "[S]trategic choices made after

19  thorough investigation of law and facts relevant to plausible options are virtually

20  unchallengeable."  Strickland, 466 U.S. at 690.

21    The second prong of the Strickland test requires a petitioner to show that counsel's

22  conduct prejudiced him.  Strickland, 466 U.S. at 691-92.  Prejudice is found where "there is a

23  reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

24  would have been different."  Id. at 694.  A reasonable probability is one "sufficient to undermine

25  ────────────────
  [8] These cases stand for the proposition that a habeas petitioner can be required to bring his claims

26  in the superior court in the first instance.  See, e.g., In re Steele, 32 Cal.4th 682, 692 (2004) ("a
  reviewing court has discretion to deny without prejudice a habeas corpus petition that was not

27  filed first in a proper lower court"); In re Hillery, 202 Cal.App.2d 293, 294 (1962) ("[T]his court
  has discretion to refuse to issue the writ...on the ground that application has not been made

28  therefor in a lower court in the first instance").

1    confidence in the outcome."  Id. at 693.  "This does not require a showing that counsel's actions

2    'more likely than not altered the outcome,' but the difference between Strickland's prejudice

3    standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'"

4    Richter, 562 U.S. at 112 (quoting Strickland, 466 U.S. at 693).  "The likelihood of a different

5    result must be substantial, not just conceivable."  Id.

6              Analysis

7         The state court's denial of petitioner's claim was not unreasonable.

8         An attorney is not required to present trial testimony from every witness suggested by

9    defendant.  United States v. Wadsworth, 830 F.2d 1500, 1509 (9th Cir. 1987) (trial tactics are

10   clearly within the realm of powers committed to the discretion of defense counsel).  To succeed

11   on a claim that counsel was ineffective in failing to call a favorable witness, a federal habeas

12   petitioner must identify the witness, provide the testimony the witness would have given, show

13   the witness was likely to have been available to testify and would have given the proffered

14   favorable testimony, and demonstrate a reasonable probability that, had such testimony been

15   introduced, the jury would have reached a verdict more favorable to the petitioner.  See Alcala v.

16   Woodford, 334 F.3d 862, 872-73 (9th Cir. 2003).

17        Here, while petitioner has identified the purportedly favorable witnesses and provided the

18   testimony those witnesses would have given where it appears the witnesses were available to

19   testify (ECF No. 1 at 10-18; see also LDP 9 at Ex. A), petitioner has not demonstrated a

20   reasonable probability that, had the testimony of Evelyn Ross (mother), Evonne Harden (cousin),

21   Harold Byrd (friend), and Jamin Thompson (friend) been introduced, the jury would have reached

22   a verdict more favorable to petitioner.

23        This conclusion is so because, as explained in the Sacramento County Superior Court's

24   reasoned opinion, while the identified witnesses could testify that petitioner *stayed* at the

25   apartment, none stated he *resided* there.  Thus, these witnesses' testimony would not have

26   established petitioner had an unconditional right of entry, allowing for a complete defense.  Nor,

27   as accurately noted by the state court, did any proof exist that petitioner officially resided at 2545

28   Fulton Avenue, Apartment 48.

1        Notably, the undersigned observes the state court's decision recites Byrd's statement that

2    Gethers was the only person with a key to the apartment.  (LDP 10 at 2.)  Byrd's testimony would

3    then have served to corroborate Gethers' testimony at trial that she was the only holder of a key to

4    the apartment and that petitioner did not have a permanent address but was using his father's

5    address in Los Angeles during that time period.  (See LD 4 at 105 [petitioner using father's

6    address, no permanent residence], 108 [Gethers did not give petitioner a key nor did she make

7    arrangements to put him on the lease].  Notably too, and more generally, in the absence of any

8    first hand knowledge that petitioner resided in the apartment with an unconditional right of entry,

9    the testimony of Ross, Harden, Byrd and Thompson that petitioner stayed at the apartment

10    (versus resided there) would have further served to corroborate Gethers' testimony that petitioner

11    sometimes stayed a few nights at her invitation and would overstay his welcome.  (See, e.g., LD 4

12    at 109-11.)  Further, a review of defense counsel's closing argument reveals quite plainly a

13    strategy to attack Gethers' credibility.  (LD 5 at 136-55.)  That strategy was largely successful.

14    The jury acquitted petitioner of a separate count of burglary and a stalking count.  (LD 1 at 191-

15    92.)

16        Reasonable tactical decisions, including decisions with regard to the presentation of the

17    case, are "virtually unchallengeable."  Strickland, 466 U.S. at 687-90; see, e.g., United States v.

18    Nersesian, 824 F.2d 1294, 1321 (2nd Cir. 1987)  ("[t]he decision whether to call any witnesses on

19    behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged

20    in by defense attorneys in almost every trial").  Moreover, the testimony petitioner's family

21    members (Ross & Harden) and friends (Byrd & Thompson) might have given – over and above

22    their statements lacking evidence of petitioner's residency or an unconditional right of entry –

23    would be "suspect based on their close relationship with" petitioner.  Gonzalez v. Wong, 667 F.3d

24    965, 988 (9th Cir. 2011) (holding that trial counsel's failure to present character witnesses who

25    were family members or close friends did not constitute ineffective assistance).  Here, the

26    California Supreme Court could have concluded that trial counsel's representation fell within the

27    wide range of the reasonable assistance called for in Strickland.  Richter, 562 U.S. at 104.

28    //

1  And, even assuming petitioner could meet the deficiency or first prong of the <u>Strickland</u>

2  analysis, he cannot meet the required prejudice or second prong.  There is no reasonable

3  probability that had the testimony at issue been presented to the jury, the result of the proceeding

4  would have been different, for the reasons explained above.  <u>Strickland</u>, 466 U.S. at 694.

5  To conclude, the state court's denial of petitioner's ineffective assistance of counsel claim

6  was not contrary to, nor did it involve an unreasonable application of <u>Strickland v. Washington</u>.

7  28 U.S.C. § 2254(d).  Therefore, petitioner is not entitled to habeas relief and his claim will be

8  denied.

9  VI.  <u>Conclusion</u>

10  For all of the above reasons, the undersigned denies petitioner's application for a writ of

11  habeas corpus.

12  Before petitioner can appeal this decision, a certificate of appealability must issue.  28

13  U.S.C. § 2253(c); Fed. R. App. P. 22(b).  A certificate of appealability may issue under 28 U.S.C.

14  § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional

15  right."  28 U.S.C. § 2253(c)(2).  The court must either issue a certificate of appealability

16  indicating which issues satisfy the required showing or must state the reasons why such a

17  certificate should not issue.  Fed. R. App. P. 22(b).

18  For the reasons set forth above, the undersigned finds that petitioner has not made a

19  showing of a substantial showing of the denial of a constitutional right.

20  Accordingly, IT IS HEREBY ORDERED that:

21  1.  Petitioner's application for a petition for writ of habeas corpus is denied; and

22  2.  The court declines to issue the certificate of appealability referenced in 28 U.S.C.

23  § 2253.

24  Dated:  March 11, 2021

25

26

27  /floy1778.157

28

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

23